EDWARDS, Judge.
This lawsuit arises out of a confrontation between members of the Baton Rouge City Police Department and the Charles Saia family.
Officer Bruce Bennett observed Charles Saia, Jr., age 21 or 22, run a red light on Government Street in the vicinity of 22nd Street. Officer Bennett gave pursuit in his police car, with red lights flashing. Saia, Jr. did not stop, but continued on his way. Eventually, Saia, Jr. arrived at his father’s home at 114 St. Rose Street and pulled into the driveway. Officer Bennett pulled his police car into the driveway behind Saia, Jr.’s automobile. Saia, Jr. emerged from his automobile and headed toward the house. At that point, members of the Saia family began to exit the house in order to see what was happening. Bennett informed Saia, Jr. that he was to be ticketed for running a red light and asked for his driver’s license. Saia, Jr. then threw his driver’s license into the air. Charles Saia, Sr. came out of the house at that point and began arguing with Officer Bennett, ordering him off of his property. Bennett then went to his police unit and radioed for assistance.
Officers Pique and Smith arrived at the house almost simultaneously. Officer Rhodes arrived shortly thereafter. Accounts of what happened from that point on vary radically, with members of the Saia family relating one version, and the police another. However, everyone who testified agreed that Saia, Jr. eventually became involved in a struggle with Officers Rhodes and Pique. As the officers were wrestling with Saia, Jr., in an attempt to handcuff him, the trio neared a fence. Saia, Jr. got one hand free and pushed on the fence. The three men lost their balance and fell over onto a concrete driveway. After the fall, Saia, Jr. continued to struggle but was eventually handcuffed and arrested.
Officer Pique struck and injured his left elbow in the fall to the driveway and eventually underwent surgery for the injury. Pique filed suit against Charles Saia, Sr. and Charles Saia, Jr. Later, Pique amended his petition to add as a defendant First of Georgia Insurance Company, Saia, Sr.’s homeowner’s insurer.
The trial court rendered judgment in favor of plaintiff and against Charles Saia, Jr. and First of Georgia in the amount of $9,936.47 plus legal interest. The court rendered judgment in favor of defendant, Charles Saia, Sr., denying plaintiff’s claim. Liability on the part of First of Georgia was predicated upon a finding that Saia, Jr., who lived with his parents, was an insured under the homeowner’s policy.
First of Georgia has taken this suspensive appeal. It contends that the trial court erred in finding that the “intentional act” exclusion of the insurance policy was not applicable. This is the only issue on appeal.
The exclusion from coverage upon which First of Georgia relies provides that the policy does not apply “to bodily injury or property damage which is either expected or intended from the standpoint of the Insured.” The trial court found that Officer Pique’s injuries were not expected or intended by the insured, Saia, Jr.
The trial court accepted the police officers’ version of the incident. Officers Smith and Pique arrived on the scene almost simultaneously. As they walked toward Officer Bennett, they could hear Saia, Sr. arguing with him, telling them all to leave his property. Saia, Sr. was standing between Officer Bennett and his son, effectively shielding Saia, Jr. Bennett then told Pique and Smith what had transpired and that he intended to ticket Saia, Jr. In light of the Saias’ lack qf cooperation and heated *898 argument, Pique decided to place Saia, Jr. under arrest. When he reached out and , took Saia, Jr. by the arm, Saia, Jr. swung at him. Pique then began to wrestle with Saia, Jr. in an attempt to subdue and handcuff him. Saia, Jr. forcibly resisted Pique’s efforts. Pique was assisted by Officer Rhodes, who walked up just as Pique reached for Saia, Jr. Officers Bennett and Smith had to restrain Saia, Sr. when the altercation erupted.
Saia, Jr. strongly resisted the officers’ efforts to subdue him. Officer Rhodes testified that Saia, Jr. was kicking and “flailing” his arms in an effort to escape. Officer Rhodes sustained bruises, cuts and scrapes in the incident. Just before the trio fell over, Officer Rhodes was holding Saia, Jr. from behind, around the waist. Officer Pique was facing Saia, Jr. and had managed to put him in a headlock, using his legs. Pique was attempting to handcuff Saia, Jr.’s hands behind his back when Saia, Jr. managed to get one hand free and push on the fence, causing them to lose their balance and fall. When the three of them landed on the ground, Saia, Jr. continued to struggle with the officers but was eventually handcuffed and placed under arrest. Saia, Jr. admitted at trial that he had pled guilty to simple assault, simple battery and resisting arrest in connection with , the incident.
In light of our review of the entire record, we conclude that the court below was manifestly erroneous in finding that Saia, Jr. did not expect or intend the injuries which he caused. The evidence reveals that Saia, Jr. precipitated a brawl by taking a swing at a police officer who was in the performance of his lawful duties. During the course of this confrontation, Saia, Jr. swung at, kicked and wrestled with the officers in an attempt to prevent his arrest. The combined, strenuous efforts of two police officers were required to subdue this young man. The extreme nature of Saia, Jr.’s actions require the conclusion that he either intended or expected injury to result therefrom.
Appellees, Pique and Saia, Sr. and Jr., ironically find themselves on the same side on appeal. They assert that Saia, Jr.’s actions were not intended or expected to produce injury. Appellees rely upon a number of cases decided by this and other circuits which have found identical or similar policy exclusions to be inapplicable. We find those cases to be of little assistance because the facts therein are readily distinguishable. However, there are two cases decided by this circuit which provide a framework for analyzing and applying the policy exclusion in question.
In Kipp v. Hurdle, 307 So.2d 125 (La.App. 1st Cir.1974), cert. denied, 310 So.2d 643 (1975), this court interpreted and found applicable an identical policy exclusion. In that case, Mrs. Hurdle discovered her husband dancing with plaintiff at the Crocodile Inn. Defendant walked over to the couple, grabbed her husband by the arm, spun him around and slapped him. Then she grabbed plaintiff by her hair and shoved her to the floor, injuring her in the process. This court concluded that the policy exclusion applied because “it is presumed that she intended the consequences of her aggressive action.”[1]
Kling v. Collins, 407 So.2d 478 (La.App. 1st Cir.1981), required this court to again consider an identical policy exclusion. Kling involved a confrontation at defendant’s home which resulted in Mr. Collins shoving Mrs. Kling in an effort to make her leave his home. In that instance, the court found the policy exclusion inapplicable:
“We cannot presume, as we did in the case of Kipp, that Mr. Collins intended the consequences of his act since the circumstances of this case and the nature of *899 his actions are not so aggressive as to reasonably justify such a presumption. The exclusionary clause should apply only when the ‘act’ is of such a nature that injury must necessarily be expected. For example, see Tobin v. Williams, 396 So.2d 562 (La.App. 3rd Cir.1981) and Kipp, supra.” 407 So.2d at 481.
In the instant case, Saia, Jr.’s actions were of such a nature that injury must necessarily be expected therefrom. The force and duration of such actions, coupled with the utter lack of justification therefor, compels such a conclusion. Thus, the policy exclusion is applicable and there is no coverage afforded under the policy.
For the foregoing reasons, that portion of the district court’s judgment rendered in favor of plaintiff-appellee, Thomas W. Pique, and against defendant-appellant, First of Georgia Insurance Company, is reversed and judgment is hereby rendered in favor of defendant-appellant, First of Georgia Insurance Company. In all other respects, the judgment of the district court is affirmed. The costs of this appeal are assessed against appellees.
REVERSED AND RENDERED IN PART AND AFFIRMED IN PART.

. 307 So.2d at 127. We are aware that the pronouncement in Kipp v. Hurdle does not enjoy universal acceptance. See, e.g., Rambin v. Wood, 355 So.2d 561 (La.App. 3rd Cir.1978). . However, even if we were inclined to reassess that rule, this would not be an appropriate case. This is not a situation where the insured is presumed to have intended the consequences of his actions. Rather, given the amount of force used by Saia, Jr., we conclude that it was manifestly erroneous to hold that his actions were not intended or expected to cause injury.